UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) CRIMINAL NO. 2:08-CR-140-DBH |
| | ) |
| MICHAEL DAVID WILLINGS, | ) |
| | ) |
| DEFENDANT | ) |

DECISION AND ORDER ON MOTION FOR
COMPASSIONATE RELEASE

The defendant Michael David Willings has moved to reduce his federal imprisonment to time served under 18 U.S.C. § 3582(c)(1)(A)(i).[1] Am. Mot. for Compassionate Release (ECF No. 64). As amended by the First Step Act, this so-called compassionate release provision allows a judge, without a BOP motion, to reduce a sentence where "extraordinary and compelling reasons warrant such a reduction."[2] I have previously ruled that the Sentencing Commission's Guideline policy statement on this provision, 1B1.13 cmt. n.1(A), which the Commission has not changed to reflect the First Step Act,[3] "provides helpful guidance" but "is not ultimately conclusive given the statutory change." United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019), aff'd, No. 19-1785 (1st Cir. July 23, 2020) ("the district court did consider other relevant

---

[1] I earlier ordered appointment of counsel for him. Second Am. Appointment of Counsel & Scheduling Order at 1 (ECF No. 60).
[2] Willings has met the requirement that 30 days pass after the Warden receives his request. 18 U.S.C. § 3582(c)(1)(A).
[3] The Commission currently lacks a quorum to amend the Guidelines.

circumstances not specifically enumerated in the guidelines").[4] The Second, Fourth, Sixth, and Seventh Circuits have gone further and ruled that the Guideline policy statement applies only to motions brought by the Director of the Bureau of Prisons, not to motions for relief brought by defendants, and that nothing limits judges' discretion in considering "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020);[5] accord United States v. McCoy, Nos. 20-6821, 20-6869, 20-6875, 20-6877, 2020 WL 7050097, at *7-8 (4th Cir. Dec. 2, 2020); United States v. Jones, No. 20-3701, 2020 WL 6817488, at *7-9 (6th Cir. Nov. 20, 2020); United States v. Gunn, No. 1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020).

I proceed therefore to assess whether Willings has presented "extraordinary and compelling reasons" for his early release. In addition to exhibits Willings's lawyer submitted in support of the motion (Willings's request to the warden, Willings's letter to me, certificates of programs Willings has completed while incarcerated, a medical chronology, and selected medical records), I have received prison medical and disciplinary records from the government in opposition and two letters from victims of the crime for which I sentenced Willings (they oppose his release).[6]

---

[4] I note that the government seems to believe that the Fox appeal is still pending, see Gov't's Obj. at 10 n.4, and chooses to ignore the growing number of circuit decisions that say the Guideline policy statement is inapplicable to motions brought by prisoners.
[5] Brooker did note that under the statute rehabilitation alone cannot be an extraordinary and compelling reason. Id. at 238.
[6] As at sentencing, victims' letters, although disclosed to defense counsel, are not docketed but are retained by Probation.

2

In 2009, I sentenced Willings as a career offender to 188 months in prison for bank robbery by use of a dangerous weapon and ordered restitution of the robbery proceeds. Judgment (ECF No. 43). Willings is now incarcerated at USP Coleman II, a high security prison in Sumterville, Florida. Gov't's Obj. at 1 (ECF No. 67). According to the BOP website USP Coleman II currently has 1 inmate and 22 staff positive for COVID-19, and 214 inmates and 20 staff who have recovered. See BOP, COVID-19 Cases, Federal Bureau of Prisons (last updated Dec. 11, 2020), https://www.bop.gov/coronavirus/. Willings is due for release July 9, 2022. Am. Mot. at 2; Gov't's Obj. at 1. He will be halfway house eligible next summer. Am. Mot. at 2.

Willings is now 50. According to his lawyer:

> He is diagnosed with multiple serious medical difficulties including serious heart disease, chronic and degenerative spinal failure and gastric ulcers. He is in the Center for Disease Control (CDC) high risk category related to COVID-19 due to his cardiac conditions. He has limited mobility, needs a cane to ambulate, and is medically confined to his cell on a ground floor and bottom bunk. While at the BOP he has had multiple surgeries: disc fusions and laminectomies in 2004 and 2007, cardiac surgery in 2014 replacing his mitral valve and installing a pacemaker, another pacemaker related surgery in 2015, a 2018 surgery for complications with the pacemaker and an August 2020 four day hospitalization for internal bleeding diagnosed as an acute gastric bleed. Willings is classified by the BOP as requiring a "Care Level 3;[7] unstable with complex chronic care" since July 1, 2014 and has [had] a "lower bunk restriction" since April 11 2016.[8]

Am. Mot. at 1 (footnote omitted).

---

[7] The most serious short of placement in an actual medical facility. Am. Mot. at 1 n.1 (citing BOP, Care Level Classification for Medical and Mental Health Conditions or Disabilities (May 2019)).

[8] Willings's back condition was known at sentencing.

3

The government questions the seriousness of some of these claimed ailments, but "concedes that the defendant's coronary artery disease constitutes an extraordinary and compelling reason warranting his release," Gov't's Obj. at 1-2. Nevertheless, it resists Willings's release on other grounds.

The government is correct to concede that if the seriousness of Willings's medical conditions were the end of the matter, they—combined with the pandemic's spread—would satisfy the standard of "extraordinary and compelling reasons" both as defined by the Guideline policy statement, 1B1.13 cmt. n.1(A), and the broader standards permitted by Fox, Brooker, McCoy, Jones, and Gunn.

But seriousness of the medical conditions is not the end of the analysis in determining whether a motion for compassionate release should be granted. According to the statute, I must also consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). The following factors from the statute are pertinent here: "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

### *The nature and circumstances of the offense.*

The offense for which I sentenced Willings was a bank robbery where Willings "pulled what appeared to be a black-colored pistol [it was later determined to be an air pistol] from his jacket pocket and said 'this is a robbery.' Willings then told [the bank teller] to 'give me all of the loose money, but don't

4

use dye packs or banded money.' [He] pointed the weapon in the direction of other individuals in the bank, ordered them to get down on the floor, and he told them to stay there because 'this was a robbery' and he was 'willing to shoot.'" Revised PSR ¶ 2. In other words, it was a very serious crime that threatened violent harm to a number of individuals; it traumatized at least the bank teller.

### *The history and characteristics of the defendant.*

Willings had a serious criminal history, some of it violent, at the time I sentenced him. He had a Criminal History score of 21, Revised PSR ¶ 43, well above the range for the top category VI, which kicks in at 13 points. He committed this offense less than two years after his release from his then most recent incarceration. Id. ¶ 42.[9] He had a serious drug addiction. Id. ¶ 70A. He has had continuing discipline issues while in prison, although he discounts their seriousness. In short, Willings had and continues to have difficulty complying with legal authority.

### *Protecting the public from further crimes of the defendant.*

When I sentenced Willings in 2009, he was a definite danger to the public. At sentencing I pointed to his "many, many previous convictions," his "severe criminal history," and "the importance of protecting the public from further crimes." Sentencing Tr. at 67. Willings argues that the passage of time, the deterioration of his physical health, and a new attitude make it unlikely he will

---

[9] Because of the nature of some of his previous convictions and the crime for which I was sentencing him, I found him to be a "career offender" under the Guidelines, a determination affirmed on appeal. See United States v. Willings, 588 F.3d 56 (1st Cir. 2009). As his lawyer points out, under current law, he would not be classified as a career offender. Am. Mot. at 2, 12.

5

resume his antisocial conduct.  I would like to believe that is true, but there is too much history in Willings's record to the contrary.

### *The need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.*

Given what I have recounted, reducing Willings's sentence now, even though he is physically compromised, would diminish each of these punishment values—that the penalty "reflect the seriousness of the offense, . . . promote respect for the law, . . . provide just punishment . . . [, and] afford adequate deterrence."  18 U.S.C. § 3553(a)(2).

For all those reasons, I **DENY** the motion for compassionate release.

**SO ORDERED.**

**DATED THIS 15TH DAY OF DECEMBER, 2020**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**